IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

EDWARD ROBINSON, JR,

                    Petitioner,

          v.

DIANE SABATKA-RINE,

                    Respondent.

**8:13CV197**

**MEMORANDUM AND ORDER**

This matter is before the court on petitioner Edward Robinson, Jr's, amended petition for a writ of habeas corpus under 28 U.S.C. § 2254, Filing No. 39.  In his amended petition, Robinson (hereinafter "petitioner" or "defendant") alleges he has been wrongfully incarcerated for over a decade.  He asserts violations of his due process rights and ineffective assistance of counsel at trial, on direct appeal, and during postconviction proceedings.

He alleges that the testimony of a witness that has now been recanted is the only evidence that supports his conviction for first-degree murder.  He argues the allegedly false, and now recanted, testimony, together with insufficient and fabricated "eyewitness" testimony, prosecutorial misconduct, and numerous trial errors, so infected his trial and subsequent state court proceedings that he is entitled to habeas corpus relief.  Respondent (hereinafter, the "State") opposes the petition.

I.    **BACKGROUND**

      A.    **Conviction**

      The facts are set forth extensively in the Nebraska Supreme Court opinions and this court's earlier opinions and need not be repeated herein except as necessary to this opinion.  *See State v. Robinson*, 724 N.W.2d 35, 48-57 (Neb. 2006) ("*Robinson I*")

abrogated in part, *State v. Thorpe*, 783 N.W.2d 749 (Neb. 2010);[1] *State v. Robinson*, 827 N.W.2d 292, 297-99 (Neb. 2013) ("*Robinson II*").

Briefly, Robinson was charged with first-degree murder and use of a deadly weapon to commit a felony in connection with the shooting death of Herbert Fant.  In jury selection, the trial judge overruled an objection under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the State's exercise of a peremptory challenge to an African-American juror.

The evidence adduced at trial establishes that Fant's wife, Parisee, and Robinson's wife, Tiffany Newte, are cousins.  The Fants had an argument on the night of the murder.  Parisee Fant had spoken to her cousin Tiffany Newte several times that day concerning problems in the marriage.  After the argument, Tiffany Newte called Parisee Fant, angry and screaming.  Parisee called the victim, Herbert Fant, and spoke to him about Tiffany Newte's call.  Herbert Fant, the victim, then had an argument with Newte, and, according to the testimony of the victim's close friend, Michael Whitlock, Robinson later said Fant allegedly "disrespected" Newte.

On learning of the argument, Robinson went looking for Fant.  Whitlock testified that Robinson called him, asking where Fant was.  Several witnesses testified the two men were fighting in the parking lot of a fast food restaurant at about 10 p.m. that evening.  Joe Lockett testified that he saw Robinson shoot the victim, who then attempted to get into his vehicle, but Robinson followed him and continued shooting.  Lockett was cross-examined extensively and inconsistencies in his testimony were elicited and argued to the jury.  The testimony of other witnesses was largely inconsistent as to the number of people present in

---

[1] In *Thorpe*, the Nebraska Supreme Court abrogated the finding in *Robinson* that the adequacy of a party's neutral explanation of its peremptory challenges is a factual determination.  *Thorpe*, 783 N.W.2d at 749.  The Court found "[f]or Batson challenges, we will review de novo the facial validity of an attorney's race-neutral explanation for using a peremptory challenge as a question of law."  *Id.* at 757.

the parking lot, the color and make of the vehicles, and what happened after the shooting. Cellular telephone records were offered and admitted, over hearsay objections, to support the timeline and locations of witnesses.

Law enforcement officers apprehended Robinson a few hours after the shooting at an automobile body shop. Robinson's nephew was also at the shop and was wearing a synthetic-fur-lined black leather hooded coat similar to that described by eyewitnesses as apparel worn by the individuals present at the shooting.

Two jurors were dismissed during the trial—one because she knew the victim's wife, and one because he had fallen asleep at the trial. Both were replaced with alternates.

The jury was instructed as follows on the varying levels of homicide. Filing No. 12-1, State Court Record at 46-50. Instruction No. 4 advised:

> Under Count 1 of the Information, depending on evidence which you may find the State has proved beyond a reasonable doubt, you may find the Defendant Edward Robinson, Jr.:
>
> 1. Guilty of murder in the first degree; or
> 2. Guilty of murder in the second degree; or
> 3. Guilty of manslaughter; or
> 4. Not guilty.
>
> SECTION 1
>
> The material elements which the State must prove by evidence beyond a reasonable doubt in order to convict the Defendant Edward Robinson, Jr. of the crime of murder in the first degree, as charged in Count 1 of the Information, are:
>
> 1. That the defendant, on or about February 24, 2003, did kill Herbert Fant; and
> 2. That the Defendant did so in Douglas County, Nebraska; and
> 3. That the Defendant killed Herbert Fant purposely and with deliberate and premeditated malice.
>
> The State has the burden of proving beyond a reasonable doubt each and every one of the foregoing material elements of the crime of murder in

the first degree done on purpose and with deliberate and premeditated malice.

To constitute murder in the first degree, there must have been an unlawful killing done purposely and with deliberate and premeditated malice. If a person has actually formed the purpose maliciously to kill and has deliberated and premeditated upon it before he performs the act and then performs it, he is guilty of murder in the first degree, however short the time may have been between the purpose and its execution. It matters not how short the time, if a person has turned it over in his mind and weighed and deliberated upon it.

If you find from the evidence beyond a reasonable doubt that each of the foregoing material elements set out in this Section 1 is true, it is your duty to find the Defendant guilty of the crime of murder in the first degree done purposely and with deliberate and premeditated malice, and you shall so indicate by your verdict.

If, on the other hand, you find that the State has failed to prove beyond a reasonable doubt any one or more of the material elements in this Section 1, it is your duty to find the Defendant not guilty of the crime of murder in the first degree. You shall proceed to consider the lesser included offense of murder in the second degree, set out in Section II.

*Id.* at 46. The following sections of the Instruction set forth the elements of second-degree murder and manslaughter under Nebraska law. *Id.* at 47-50.

In closing argument, the State argued that the cell phone records were unimpeachable third party independent evidence that pinpointed an individual's exact location and time. Defense counsel made several objections, but did not move for a mistrial.

During deliberations, the bailiff was called to the jury room and informed that the jury had found a marijuana cigarette in the pocket of a coat that had been offered in evidence at the trial. The coat matched witnesses' description of a coat worn at the scene and was worn by the defendant's nephew at the time of the arrest. The marijuana cigarette had not been offered into evidence by either party and presumably neither party knew it was there. Both parties' attorneys were advised of this fact. The jury continued to deliberate and

4

shortly thereafter returned a verdict of guilty to the charges of first-degree murder and use of a deadly weapon to commit a felony.

Robinson was sentenced to life in prison on the first-degree murder conviction and, was sentenced as a habitual criminal to ten consecutive years for use of a deadly weapon to commit a felony, to be served consecutively.

### B.    Direct Appeal

In his direct appeal to the Nebraska Supreme Court, Robinson raised the following issues: (1) the trial court erred in allowing the State to strike a juror only because of race; (2) the trial court erred in overruling Robinson's motion in limine regarding certain cell phone record evidence; (3) the trial court erred in admitting such cell phone evidence; (4) the trial court erred in ruling on Robinson's motion in limine regarding Robinson's nephew's coat; (5) the evidence adduced at trial was insufficient to convict Robinson of the charges on which he was convicted; (6) the trial court erred in overruling Robinson's motion to dismiss; (7) the trial court erred in not granting Robinson's motion for new trial; (8) the State committed prosecutorial misconduct; (9) the trial court erred in admitting evidence and finding Robinson of being a habitual criminal; and (10) the trial court erred by not immediately removing two jurors. *See Robinson I*, 724 N.W.2d at 56-57.  Robinson was represented by the same counsel at trial and on appeal.

The Nebraska Supreme Court rejected Robinson's contentions of trial error.  It held that the cellular telephone records had been properly admitted under the business records exception to the hearsay rule and also found that Robinson had the opportunity to cross examine all the telephone company witnesses on the records.
It further found no error in the admission of the fur-lined leather coat, stating the evidence regarding the coat was relevant and was not unfairly prejudicial because it matched the

5

descriptions given by witnesses and Robinson's nephew was wearing it at the time of the arrests.

The Nebraska Supreme Court addressed Robinson's sufficiency-of-evidence challenge to his first-degree murder conviction and concluded "there [was] sufficient evidence to support the conclusions that the defendant killed the victim and that he committed the killing with deliberate and premeditated malice." *Robinson I*, 724 N.W.2d at 74. The Court relied, in part, on the reported statement by Robinson that he did not want to have to "pop" the victim. *Id.* The Court reasoned the "statement could easily be interpreted as a reference to killing the victim and, while not conclusive, [it] supports an inference that the defendant was contemplating the possibility of killing the victim well before their actual confrontation." *Id.* The Court relied on the testimony of Michael Whitlock at trial, wherein he "indicate[d] that the defendant was angry with the victim and had been searching for the victim, suggesting both a motive and a deliberate intent to confront the victim and perhaps to kill him." *Id.*

Further, the Nebraska Supreme Court reviewed the State's closing argument and determined that the State did not misstate the law, did not act improperly, and did not mislead the jury. *Id.* at 75. As to the Batson challenge to the removal of a juror, the Nebraska Supreme Court found the trial court's conclusion that the State had a race-neutral justification for striking the juror and the defendant had not proved purposeful discrimination was not clearly erroneous.[2]

### C.    Postconviction Motion and Appeal

---

[2] The State's professed reason for striking Parker was that he lived in the area and drove a school bus in the area where the defendant's children went to school, he was scowling, he barely answered questions, and he emanated an aura of hostility to the State. *Robinson I,* 724 N.W.2d at 58.

The defendant filed an action for postconviction relief and the District Court for Douglas County, Nebraska ("Postconviction Court") held an evidentiary hearing on the motion. Filing No. 13-2, Bill of Exceptions, Volume I, Hearing Transcript at 4-12, ECF pp. 864-72. In his postconviction action, Robinson asserted ineffective assistance of counsel in several particulars: (1) failing to present the defense of an intervening cause of death for Fant, i.e., a torn aorta caused by emergency medical staff in attempting to treat the victim; (2) failing to move for a mistrial after learning that the jury discovered extraneous evidence in the form of a marijuana cigarette within a separate piece of evidence; (3) failing to call Shamika Brown and other witnesses to provide an alibi defense; (4) failing to attack a witness' identification of the victim's car as a Chevrolet Impala, rather than a Chevrolet Caprice; (5) failing to investigate a "Crimestoppers" phone call; (6) failing to challenge the cell phone evidence admitted at trial as irrelevant and unduly prejudicial; (7) failing to obtain an expert witness on unreliability of cell phone evidence; (8) failing to object to the use of a large chart listing all of the phone calls made by the defendant, the victim and other witnesses on the day of the shooting; (9) failing to obtain copies of vehicle registrations; failing to move for a mistrial during the State's closing argument; (10) failing to move for a mistrial because of the behavior of two jurors; (11) failing to sit with him at trial; and (12) failing to request a rehearing after the defendant's direct appeal. Filing No. 12-5 at ECF pp. 720-25, *State v. Robinson*, No. 161-1412-5, Order on Defendant's Second Amended Verified Motion for Postconviction Relief (Part 1) (hereinafter "Postconviction Order"); Filing No. 12-6 at ECF pp. 726-31, Postconviction Order (Part 2).

The court took judicial notice of the entire record in the case. Filing No. 13-2, Hr'g Tr. (Pt. 1) at 5-6, ECF pp. 865-66. Robinson also offered the deposition testimony of the

trial judge's bailiff, Robinson's trial counsel, a physician, a police officer, and the defendant. *Id.* at 6, ECF p. 866, Exs. 206-211.

The Postconviction Court rejected the defendant's claims. Filing No. 12-5, Postconviction Order (Pt. 1); Filing No. 12-6 Postconviction Order (Pt. 2). The court addressed the claim of ineffective assistance in connection with the marijuana cigarette that the jury discovered in the pocket of the nephew's coat. Filing No. 12-5, Postconviction Order at 4-6, ECF pp. 722-25. Apparently assuming deficient performance, the Court assessed the prejudice component of the ineffective assistance test. *Id.* It noted that both the prosecution and defense had argued that the coat belonged to Robinson's nephew. *Id.,* Postconviction Order (Pt. 1) at ECF p. 723. It found there was "no evidence that the jury could have reasonably presumed that the coat belonged to Robinson" or that Robinson "had anything to do with the improper and extrinsic evidence discovered by the jury." *Id.* Stating that Robinson's trial counsel had testified that she had not moved for mistrial because she did not think it would have affected the outcome of the trial, the Court found:

> Based on the totality of the evidence presented to the jury as to the Defendant's guilt, including his motivation, and pursuit of the victim on the day of the shooting, and the telephone calls made between his phone, the victim's phone, and the third party go-between, and the alleged approach to the shooting scene of the Defendant's cell phone proven through cellular telephone evidence, culminating with the Defendant's identification by an eye witness at the scene, the Defendant has failed to show that there is a reasonable probability that the outcome of his trial would have been any different had his attorney moved for a mistrial, or made the extrinsic evidence part of a motion for new trial.

*Id.* at ECF pp. 724-25.

With respect to alleged ineffective assistance in failing to call alibi witnesses, the defendant's trial attorney testified that she did not think Brown's testimony would have added anything. Filing No. 13-2, Deposition of Susan Bazis ("Bazis Dep.") at 12. She

testified that Danny Robinson's attorney would not allow him to testify and that Cassandra Lockett had given inconsistent statements about what Joe Lockett had told her. *Id.* Jeremy Webb had given testimony that did not correspond to photographic evidence and Bazis stated she had concerns about whether he would be believed. *Id.* at 14-15. Counsel concentrated on discrediting the key eyewitness who positively identified the defendant as the shooter. Filing No. 12-5, Postconviction Order at ECF p. 724. The Postconviction Court found counsel's conduct was trial strategy and found the defendant had "failed to show what a particular witness' testimony might have been or how he was otherwise prejudiced by his attorney's failure to call Ms. Brown, or anyone else for that matter, as a witness at trial." *Id.* at ECF p. 725.

The court also determined that Robinson failed to show that the outcome of his trial would have been different had his counsel obtained copies of the registrations of the vehicles that had been identified inconsistently at trial. *Id.* at ECF p. 728. The court rejected the contention that "attacking a witness' identification of the victim's car as a Chevrolet Impala, as opposed to a Chevrolet Caprice, which the Defendant argues influenced that same witness' identification of the Defendant's vehicle at the scene of the shooting as a Cadillac Escalade SUV, instead of a GMC Yukon Denali SUV" would demonstrate a reasonable probability of a different result. *Id.*

The court further rejected Robinson's argument that the result would have been different had his counsel pursued a Crimestoppers tip involving a comment overheard on a bus that indicated someone's brother had stated he had shot the victim.[3] *Id.* at ECF p. 726.

---

[3] The Crimestoppers report stated :

Caller stated that this morning on the school bus they heard a young female named Danielle Webb say that it was her mom's boyfriend that killed FANT. Caller believes that this female is

The court noted that the tip was anonymous and found Robinson had not "included specific allegations regarding testimony of a witness who should have been called or how the information from the tip might have been received in evidence at the Defendant's trial." *Id.* at ECF p. 726.  Further, the court found Robinson could not show prejudice as a result of either the failure to call any particular witness, the failure to challenge cellular phone records as irrelevant and unduly prejudicial, or the failure to offer an alternative expert opinion to refute cellular telephone evidence.  *Id.* at ECF pp. 726-730.  The court also determined that Robinson failed to show he was prejudiced by counsel's failure to move for a mistrial regarding the prosecution's closing argument, and to move for removal of the two jurors, or to timely move for rehearing on direct appeal.  *Id.* at 730.  The Postconviction Court stated:

> The Court notes from the Defendant's trial attorney's deposition that she was an experienced criminal defense attorney, whose law practice before she became a judge consisted of seventy-five to eighty percent criminal defense work. She had worked in the Public Defender's office in Douglas County for two years before going into private practice, and had represented defendants in five to ten homicide cases, all involving jury trials. The Defendant's attorney was entitled to formulate a strategy that was reasonable at the time of the trial, and to balance limited resources in accordance with effective trial tactics and strategies. The Defendant has failed to offer any evidence that his trial attorney's performance in representing the Defendant was somehow deficient, that is, that it did not equal that of a lawyer with ordinary training and skill in criminal law in Douglas County at the time of the Defendant's trial. Nor, has the Defendant shown how any alleged deficient performance prejudiced the defense in his case, nor has the Defendant shown a reasonable probability that but for his trial lawyer's deficient performance, result of the trial would have been any different.

*Id.* at ECF pp. 730-31.

On appeal to the Nebraska Supreme Court, the defendant asserted that the Postconviction Court erred when it ruled that his counsel was not ineffective in failing to

---

a 3rd or 4th grader at Fullerton Elementary School and that she may live in the area of 26th & Fort St.

Filing No. 12-4, Postconviction Petition, Ex. 7, ECF p. 592.  The caller was not identified.  *Id.*

request a mistrial or to inform Robinson that the jury had discovered a marijuana cigarette in an exhibit; in failing to call a specific defense witness or investigate a Crimestoppers telephone call; failing to properly handle the cellular telephone evidence; failing to establish the importance of the vehicle identification, and failing to move for mistrial or to timely file a motion for rehearing in Robinson's direct appeal. *Robinson II*, 827 N.W.2d at 299. The Nebraska Supreme Court affirmed the Postconviction Court and denied Robinson's motion for postconviction relief. *Id.* at 304.

The Court noted that all of Robinson's claims were based on ineffective assistance of counsel and it addressed the issue of the marijuana cigarette in that context. *Id.* at 299-301. Although it acknowledged that extraneous material or information considered by a jury can be prejudicial without proof of actual prejudice if the material or information relates to an issue submitted to the jury and there is a reasonable possibility that it affected the jury's verdict, it found no prejudice could be presumed from the discovery of the marijuana cigarette because the extraneous information was not related to the charges Robinson was facing. *Id.* at 300. The court found Robinson had not proven prejudice, or that the outcome of the trial would have been different. *Id.* The court noted there were numerous facts in evidence that pointed toward Robinson's guilt. *Id.* at 301. These included that Robinson had a motivation for the killing, he pursued Fant, and they were arguing at the time of the shooting. *Id.* at 301. Also, the court noted that one eye witness had identified Robinson as the killer. *Id.*

The court further found no ineffective assistance error in trial counsel's failure to inform Robinson of the discovery of the marijuana cigarette until after the direct appeal. *Id.* at 301. The court also made the finding that there was no error in counsel's not calling Shamika Brown, Robinson's brother's fiancée, as a witness. *Id.* The court found the

11

decision was a matter of trial strategy.  *Id.*  With respect to the Crimestoppers telephone call, the court found Robinson could not show the testimony from an unknown person would have changed the result.  *Id.* at 302.  The court also reviewed the cellular evidence admitted at trial and found that the defendant had not shown that if counsel had objected to the evidence as irrelevant and unduly prejudicial, it would have been kept out of evidence.  *Id.*

The Nebraska Supreme Court also addressed the issue of the identification of vehicles.  On direct appeal, the issue had been discussed in the context of the prosecutor's comments during closing argument.  *Id.* at 303.  The Nebraska Supreme Court addressed the issue of "whether Robinson was unfairly prejudiced because his counsel did not offer certified copies of the titles or registrations of the vehicles at issue in trial so that counsel could then object when witnesses misidentified the vehicles as a Chevrolet Impala instead of a Caprice and a Cadillac Escalade instead of a GMC Yukon Denali."  *Id.* at 303.  The court found Robinson had not shown how the outcome of his trial would have been different if the makes and models of the vehicles were in evidence.  *Id.*

With respect to the motion for mistrial during closing argument, the Nebraska Supreme Court found that the prosecutor did not mistake the law and did not mislead the jury.  *Id.* at 303.  The Supreme Court found the defendant was procedurally barred from reasserting the claim, addressed on direct appeal, that the trial court had abused its discretion in removing two jurors.  *Id.*  Last, it found no error in trial counsel's failure to move for rehearing on direct appeal since motions for rehearing are discretionary with the court. *Id.* at 304.

### D.   Habeas Corpus Petition

The petitioner filed his *pro se* Petition for Writ of Habeas Corpus in this court on July 2, 2013.  Filing No. 1.  He subsequently filed an Amended Petition on July 23, 2013, adding

an additional a claim of "actual innocence" based upon the affidavit of Michael Whitlock.[4]

*See* Filing No. 33.  The defendant contends that Whitlock ostensibly recanted the testimony

at trial that Robinson had stated he would "pop" the victim.  On initial review, this court

determined that Robinson asserted two potentially cognizable claims—denial of his Fifth

Amendment right to due process and denial of his Sixth Amendment right to ineffective

assistance of counsel—each including multiple grounds.  Filing No. 5, Memorandum and

Order at 1-2. [5]  In his brief, Robinson categorizes his due process claims as (1) actual

_____

[4] Robinson also moved for an evidentiary hearing to expand the record pursuant to 28 U.S.C. § 2254(e)(2).  *See* Filing No. 45, Motion.  He sought to develop facts to demonstrate actual innocence of first degree murder. He offered the August 8, 2014, handwritten affidavit from Michael Whitlock, which states:

> I Michael Whitlock am writing this affidavit to let the state and anybody else it may concern, that the statements about this case that the statement that I made was not wat [sic] I actually [sic] said, the state took my words and turned them around, I never said that Eddie Robinson did what he was accused of. Yes he did call my phone the nite [sic] of the incident, yes I did talk to him, but he never said that he was going to hurt somebody, he jus [sic] wanted to talk it out. During the time of the trial, I was under arrest of the Federal Goverment [sic], and was told that if I said wat [sic] they wanted me to say that I may get a time cut on my sentence, at that time the Feds said I was looking at 24yrs, which was not true because I ended up pleading out to 12yrs 7 months, but I never got a time reduction [sic], I did my full time, the prosetor [sic] on the case never contacted me or my family and like I said I never got a time cut I did all my time. For the record, Eddie Robinson never told me on the phone that he was going to kill Herb Faint, he jus [sic] said that he jus [sic] wanted to talk to him.

*See* Filing No. 36–1, Whitlock Aff.  The United States Magistrate Judge denied that motion, finding that Robinson could not meet the high standard of establishing "'by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense' in light of the new evidence."  Filing No. 51, Order at 5 (quoting 28 U.S.C. § 2254(e)(2)(B)).  This court overruled the petitioner's objection to the finding.  Filing No. 54, Order at 5.

[5] Condensed and summarized, the court found the following cognizable claims:

> Claim One: Petitioner was denied due process in violation of the Fourteenth Amendment because

> (1) the state used a preemptory strike to remove a juror based on the juror's race, (2) Petitioner's cell phone records were admitted as evidence, (3) Petitioner's nephew's coat was admitted into evidence, (4) the evidence at trial was insufficient to find Petitioner guilty beyond a reasonable doubt, (5) the prosecutor committed prosecutorial misconduct during opening and closing arguments, (6) the trial court erred in determining that Petitioner was a habitual criminal, (7) a sleeping juror was not removed from the jury, (8) a

innocence of first-degree murder; (2) misleading jury instructions, (3) insufficient evidence of deliberate and premeditated malice and of identity, (4) improper jury consideration of extraneous evidence (5) prosecutorial misconduct that infected the trial with unfairness and in the State's wrongful conduct in striking a juror solely based on race (6) error in evidentiary and other rulings including admission of cell phone evidence and a fur-lined coat, removal of jurors and finding the defendant was a habitual criminal. In its Amended Answer, the State denies the defendant's allegations and contends that the defendant's claim of actual innocence is untimely. It also contends the defendant has not rebutted the presumption of correctness of facts by clear and convincing evidence. The State concedes the defendant has exhausted all his claims but contends his claims were not fairly presented in state court as Due Process claims and are therefore procedurally defaulted.

In response to the State's procedural bar argument, Robinson argues that his Due Process claim is a freestanding claim that he is actually innocent of first degree murder that

---

juror who had contact with the victim's wife was not removed from the jury, and (9) an erroneous jury instruction was used.

Claim Two: Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his trial counsel failed to

(1) move for a mistrial when she learned that the jury discovered a marijuana cigarette in an exhibit offered during trial, (2) inform Petitioner that the jury discovered a marijuana cigarette in an exhibit until after Petitioner's direct appeal, (3) call Shamika Brown, Damar Haywood, Jeremy Webb, and Cassandra Lockett as witnesses, (4) investigate a crime stoppers telephone call, (5) properly defend Petitioner with regard to cell phone evidence, (6) object to the State's repeated, and incorrect, reference to the victim's vehicle as an "Impala," (7) move for a mistrial during the prosecution's closing arguments, (8) move for a mistrial based on the jurors' behavior, (9) argue that an intervening cause led to the victim's death, (10) move for a mistrial on grounds of prosecutorial misconduct, (11) move for a mistrial based on the jurors' inspection of a coat in evidence, (12) depose Cassandra Lockett, and (13) introduce Joe Lockett's February 26 statement as evidence to impeach his credibility.

Filing No. 5, Memorandum and Order at 1-2.

will allow him to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar.  He asserts that the actual innocence claim did not arise factually until August of 2014 when he received Whitlock's affidavit recanting his trial testimony.  Also, he argues that his erroneous jury instructions claim could not have been presented to the state courts because the Nebraska Supreme Court articulated the legal basis for the claim after his direct appeal and motion for postconviction relief.[6]  He asserts that the factual or legal basis for his claim was not reasonably available at trial and argues that amounts to cause that excuses procedural default.

## II.   LAW

### A.   Standard of Review

When a state court has adjudicated a habeas defendant's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts.  *See* 28 U.S.C. § 2254(d).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "habeas relief is authorized if the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  *White v. Wheeler*, 577 U.S. ____, ____, 136 S. Ct. 456, 460 (2015) (quoting 28 U.S.C. § 2254(d)(1)).  A state court decision involves an "unreasonable application" when it identifies the correct legal rule, but unreasonably applies it to the facts.  *Williams v. Taylor*, 529 U.S. 362, 407.  "A state court's application of clearly established federal law must be objectively unreasonable, not merely incorrect, to warrant the granting of a writ of habeas corpus."  *Arnold v. Dormire*, 675 F.3d 1082, 1085 (8th Cir. 2012) (internal citations and quotation marks omitted).  Under § 2254(d)(1), "'[a] state

---

[6] That contention is based on the case of *State v. Smith*, 806 N.W.2d 383, 393-94 (2011) ("*Smith I*"), in which the Nebraska Supreme Court clarified that due process is violated if the State shifts the burden of proof to a defendant where the defendant's affirmative defense negates an element of the crime.

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *Woods v. Etherton*, 578 U.S. ____, ____, 136 S. Ct. 1149, 1151 (2016)(per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "The state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *White v. Woodall,* 572 U.S ____, ____, 134 S. Ct. 1697, 1702 (2014) (quoting *Harrington,* 562 U.S. at 103).

In considering whether to award habeas corpus relief on the basis of "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under 28 U.S.C. § 2254(d)(2), the federal court must accord the state trial court substantial deference. *Brumfield v. Cain*, 576 U.S. ____, ____, 135 S. Ct. 2269, 2277 (2015). A federal court must presume that a factual determination made by the state court is correct, unless the defendant "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Federal courts "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield*, 576 U.S. at ____, 135 S. Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "If '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Id.*https://www.westlaw.com/Document/I638108a305be11dfae65b23e804c3c12/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=da3.0 (quoting *Wood*, 558 U.S. at 301) (ellipses in *Brumfield*).

In the context of section 2254 habeas corpus petitions, ineffective assistance of counsel claims are afforded "a substantially higher threshold" of deference that does not

focus on "whether a federal court believes the state court's determination [under *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)] was incorrect" but whether the "determination was unreasonable[.]" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  When the claim at issue is one for ineffective assistance of counsel, "AEDPA review is 'doubly deferential,' because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'." *Woods*, 578 U.S. at ____, 136 S. Ct. at 1151 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) and *Burt v. Titlow*, 571 U.S. ____, ____, 134 S. Ct. 10, 17 (2013) (internal citation omitted)).  "In such circumstances, federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'"  *Id.* (quoting *Burt*, 571 U.S. at ——, 134 S. Ct. at 13).

The Supreme Court, "time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *Wheeler*, 136 S. Ct. at 460 (quoting *Burt, 571 U.S. at ____*, 134 S. Ct. 10, 16 (2013)).  "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.  The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*  "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court.  *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the

defendant's] claim.  The claim must have been 'adjudicated on the merits' in state court."). "A postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA." *Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).  A federal court reviewing a habeas claim under AEDPA must also "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts."  *Id.* at 497 (internal citation omitted).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions . . . . [A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see Arnold*, 675 F.3d at 1086 ("We do not second-guess the decision of a [ ] state court on [the state's] law.").  To the extent that a state-court decision is based on a state rule, the decision has a state-law component, and federal courts have no jurisdiction to review a state court's decision on a question of state law. *Foster v. Chatman*, 578 U.S. ____, ____, 136 S. Ct. 1737, 1759 (2016).

### B.   Procedural Bar

To be eligible for federal habeas corpus relief, a state prisoner must first "exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (quoting *Middleton v. Roper*, 455 F.3d 838, 855 (8th Cir. 2006)).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In Nebraska, "one complete round" ordinarily means that each habeas claim must

18

have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court.  *See Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005).

"Resolving whether a petitioner has fairly presented his claim to the state courts, thus permitting federal review of the matter, is an intrinsically federal issue that must be determined by the federal courts." *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995).  "In order to 'fairly present' a claim, 'a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Nash v. Russell*, 807 F.3d 892, 898 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 1825 (2016) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161–62 (8th Cir. 1999) (en banc)).  "This requirement is not met by '[p]resenting a claim that is merely similar to the federal habeas claim.'" *Id.* (quoting *Barrett*, 169 F.3d at 1162. at 1162); *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (noting "'[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution'" (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).

"Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold*, 675 F.3d at 1086-87 (internal citations and quotations marks omitted).  "The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 *et seq*. is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights," however, "the need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Sims*, 761 N.W.2d 527, 533 (Neb. 2009).  Under Nebraska law, "on postconviction relief, a

defendant cannot secure review of issues which were or could have been litigated on direct appeal." *State v. Bazer*, 751 N.W.2d 619, 627 (Neb. 2008).

Federal courts generally will not review claims that a state court has refused to consider because of the petitioner's failure to satisfy a state procedural requirement. *Hunt v. Houston*, 563 F.3d 695, 703 (8th Cir. 2009); *see Johnson v. Lee*, 578 U.S. ____, ____, 136 S. Ct. 1802, 1804 (2016) (per curiam).   This rule applies only if the state decision is based on independent grounds and is adequate to support the judgment. *Hunt*, 563 F.3d at 703.   State rules count as "adequate" if they are "firmly established and regularly followed." *Johnson,* 136 S. Ct. at 1804 (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal quotation marks omitted).   A rule that requires criminal defendants to raise available claims on direct appeal and bars, as procedurally defaulted, a claim raised for the first time on state collateral review if the defendant could have raised it earlier on direct appeal is adequate because it is "longstanding, oft-cited, and shared by habeas courts across the Nation." *Id.* at 1803 (noting that all states apply the rule).

"The doctrine barring procedurally defaulted claims from being heard is not without exceptions—[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Trevino v. Thaler,* 569 U.S. ____, ____, 133 S. Ct. 1911, 1917 (2013) (quoting *Martinez v. Ryan*, 566 U.S. ____, ____, 132 S. Ct. 1309, 1315-16 (2012)).   Also, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

To invoke the actual innocence exception, a petitioner "must show that in light of all the evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Jennings v. United States*, 696 F.3d 759, 764–65 (8th

Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Courts have permitted petitioners to collaterally attack convictions on the basis of intervening decisions modifying the substantive criminal law defining the offense, despite procedural default, if the petitioner makes a showing of actual innocence— that the petitioner did not commit the offense as modified by a change in law that decriminalizes the conduct. *United States v. Morgan*, 230 F.3d 1067, 1070 (8th Cir. 2000).

### C.    Due Process

Due process requires a prosecutor to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *In re Winship*, 397 U.S. 358, 365 (1970); *State v. Hinrichsen*, 877 N.W.2d 211, 222 (Neb. 2016) (noting that the due process requirements of Nebraska's Constitution are similar to those of the federal Constitution). "The State is foreclosed from shifting the burden of proof to the defendant only 'when an affirmative defense does negate an element of the crime.'" *Smith v. United States*, ___ U.S. ___, ___, 133 S. Ct. 714, 719 (2013) (quoting *Martin v. Ohio*, 480 U.S. 228, 237 (1987) (Powell, J., dissenting)). "Where instead it 'excuse[s] conduct that would otherwise be punishable,' but 'does not controvert any of the elements of the offense itself,' the Government has no constitutional duty to overcome the defense beyond a reasonable doubt." *Id.* (quoting *Dixon v. United States*, 548 U.S. 1, 6 (2006)).

"In a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Nash*, 807 F.3d at

897 (quoting *Jackson*, 443 U.S. at 324).  In conducting the sufficiency-of-evidence inquiry, the reviewing court must "give[ ] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Further, the court must evaluate the record evidence "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.* at 324 n.16.

"First degree murder in Nebraska occurs when a person kills another purposely and with deliberate and premeditated malice."  *Hinrichsen*, 877 N.W.2d at 223.  Due process is met as long as the State has to prove beyond a reasonable doubt all of those enumerated elements:  a killing, done purposely, with deliberate and premeditated malice.  *Id.*; *see* *Patterson v. New York*, 432 U.S. 197, 206 (1977).  The United States Supreme Court has not adopted "as a constitutional imperative . . . that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused."  *Patterson*, 432 U.S. at 210.

Under Nebraska law, the existence of a sudden quarrel "is the converse of the enumerated elements of first degree murder."  *Hinrichsen*, 877 N.W.2d at 227.  Because "lack of sudden quarrel is not a statutory element of first degree murder in Nebraska . . . an explicit jury instruction advising that the State must prove lack of sudden quarrel provocation beyond a reasonable doubt is not required in order to comport with the dictates of due process."  *Id.* at 226.  "Instead, the question is whether the jury instructions given, viewed as a whole, adequately informed the jury that the State had the burden to prove lack of sudden provocation beyond a reasonable doubt in order to convict [the defendant] of first degree murder."  *Id.*  In making a finding beyond a reasonable doubt that a defendant acted with deliberate and premeditated malice, the jury necessarily simultaneously finds beyond a

22

reasonable doubt that there was no sudden quarrel provocation, i.e., that the defendant did not act without due deliberation and reflection. *Id.* (noting "[i]t is logically impossible to both deliberate and not deliberate at the same time"); *see also State v. Alarcon–Chavez*, 821 N.W.2d 359, 368-69 (Neb. 2012)(in concluding that the defendant killed the victim purposely and with deliberate and premeditated malice, the jury necessarily considered and rejected that the killing was the result of provocation and was therefore without malice). Where a jury finds beyond a reasonable doubt that premeditation, intent, and malice exist, the defendant is not prejudiced by an error in a step instruction. *Alarcon–Chavez*, 821 N.W.2d at 368-69 (involving step instruction similar to that herein).

Habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that the error resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The state bears the burden of persuasion on the question of prejudice. *Fry v. Pliler*, 551 U.S. 112, 121 n.3 (2007). To assess the prejudicial impact of trial-type federal constitutional error in a state-court criminal trial, federal courts determine whether the trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638; *see Fry*, 551 U.S. at 121.

The commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal; "[i]nstead 'most constitutional errors can be harmless.'" *Washington v. Recuenco*, 548 U.S. 212, 218 (2006) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). Only in a narrow category of cases—those involving "structural defects" that deprive defendants of basic protections and render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence—will an error always invalidate a conviction, even without a showing of prejudice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 n.4 (2006) (explaining trial error/structural defect dichotomy and finding

structural error in denial of counsel of choice); *Recuenco*, 548 U.S. at 218-19 ("Only in rare cases has [the Supreme Court] held that an error is structural, and thus requires automatic reversal").[7]  Structural defects "'defy analysis by "harmless-error" standards' because they 'affec[t] the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself.'"  *Gonzalez-Lopez*, 548 U.S. at 148 n.4 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)).

### D.    Prosecutorial Misconduct

The prosecutor plays a special role in the search for truth in criminal trials. *Strickler v. Greene*, 527 U.S. 263, 281 (1999).  Within the federal system "the United States Attorney is 'the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.'"  *Id.* (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).  Prosecutorial misconduct, such as the use of perjured testimony or other governmental corruption of the truth-finding process, can result in a deprivation of fundamental due process.  *Ray v. United States*, 588 F.2d 601, 603 (8th Cir. 1978); *see also United States v. Agurs*, 427 U.S. 97, 103 (1976).  A conviction obtained by egregious misconduct, such as the knowing use of perjured testimony, is fundamentally unfair and must be set aside if there is any reasonable

---

[7] Structural error has been found in the following circumstances:  a defective reasonable-doubt instruction, *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993); conflicted counsel, *Mickens v. Taylor*, 535 U.S. 162, 166 (2002); appointment of an interested prosecutor, *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 909 (1987) (plurality opinion); racial discrimination in selection of a grand jury, *Vasquez v. Hillery*, 474 U.S. 254, 264 (1986); denial of a public trial, *Waller v. Georgia*, 467 U.S. 39, 49 (1984); failure of counsel to subject the government's case to meaningful adversarial testing, *United States v. Cronic*, 466 U.S. 648, 659 (1984); counsel operating under an actual conflict of interest, *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); denial of representation at trial, *McKaskle v. Wiggins*, 465 U.S. 168, 174-76 (1984); denial of counsel, *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963); and a trial by a biased judge, *Tumey v. Ohio*, 273 U.S. 510 (1927).

likelihood that the false testimony could have affected the judgment of the jury. *United States v. Bagley,* 473 U.S. 667, 678 (1985); *Agurs*, 427 U.S. at 103.

Lesser violations, however, such as a prosecutor's improper comments, will be held to violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. ____, ____, 132 S. Ct. 2148, 2153 (2012); *see Darden v. Wainwright*, 477 U.S. 168, 180 n.11 (1986) (holding that an inflammatory closing argument did not warrant habeas relief).

### E.   Ineffective Assistance of Counsel

When a petitioner claims ineffective assistance of counsel, he generally must establish:   (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) that the defendant suffered prejudice as a result. *Strickland*, 466 U.S. at 687–88; *see Hinton v. Alabama*, 571 U.S. ____, ____, 134 S. Ct. 1081, 1088 (2014) ("Under *Strickland*, we first determine whether counsel's representation fell below an objective standard of reasonableness.   Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (internal quotations omitted)).

"The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community:   'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Hinton*, 134 S. Ct. at 1088 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)).  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* (quoting *Strickland*, 466 U.S. at 688). Counsel is not deficient for failing to anticipate a change in existing law. *See Carter v. Hopkins*, 92 F.3d 666, 670 (8th Cir. 1996); *State v. Iromuanya*, 806 N.W.2d 404, 435 (Neb.

2011) ("*Iromuanya II*").  Also, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action.  *Strickland*, 466 U.S. at 690.

The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* at 694.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

III.   **DISCUSSION**

A.   **Due Process**

The court first finds that Robinson's due process claims are procedurally barred.  His claims were not presented to Nebraska state courts as due process claims, but as ineffective assistance claims.  Accordingly, those claims have not been fairly presented to the Nebraska courts and are procedurally barred.

Robinson's due process claims involve the related contentions that the use of an erroneous jury instruction precluded the jury from considering a lesser-included offense and that, had the jury been properly instructed, the evidence would be insufficient to support a first-degree murder conviction.  The court first rejects the defendant's argument that his showing of actual innocence of first-degree murder, based on the alleged newly discovered evidence of Whitlock's recantation of his testimony, provides cause to excuse any procedural default on his due process claims.  The court agrees with the magistrate judge that the supposed recantation does not actually refute Whitlock's testimony at trial.

26

The court finds the circumstantial evidence at trial, even without Whitlock's testimony that Robinson had made a comment about "popping" or killing Fant, is sufficient to support the jury's first-degree murder finding.  Fant's wife testified she was angry with her husband, the victim, and conveyed that information to her cousin, Robinson's wife, who then quarreled with the victim.  The cell phone records of conversations between the various witnesses support the inference that Robinson, too, was angry with Fant and pursued him. This court finds no error in the state courts' finding that the evidence supports a finding of premeditation and deliberation.   Robinson cannot show prejudice to overcome the procedural bar on his sufficiency of evidence claim.

Also, although Robinson challenged the prosecutor's conduct in referring to step instructions in closing argument, he did not raise a due process claim with respect to improper jury instructions on direct appeal, nor did he address the issue on postconviction review.  Robinson now argues that the evidence demonstrates that he is actually innocent of first-degree murder and contends that if the jury been properly instructed on Nebraska law for homicide, no juror, acting reasonably, could have found him guilty of any crime greater than manslaughter.

The court finds that no subsequent change in Nebraska law on the crime of murder provides cause to excuse the procedural bar on his jury instruction claim.  In reliance on *Smith I*, 806 N.W.2d at 393-94, Robinson argues that the evidence of a sudden quarrel reduces either first or second degree murder to manslaughter because intent to kill is an element of both.  *See* Filing No. 47, Brief at 21 n.11.  Unfortunately for the defendant, that contention is unavailing under Nebraska law.   Subsequent to *Smith I*, the Nebraska Supreme Court rejected the argument that "because a jury in a second degree murder case must be specifically instructed that the State has to prove lack of sudden quarrel

provocation in order to prove the murder, a jury in a first degree murder case must also be specifically instructed that the State has to prove lack of sudden quarrel provocation in order to prove the murder." *Hinrichsen*, 877 N.W.2d at 221. It found that "when the jury found premeditated and deliberate malice beyond a reasonable doubt, it simultaneously found no sudden quarrel provocation beyond a reasonable doubt" and concluded that the defendant therein had received due process. *Id.* at 215.

Robinson's claim might have some merit if there were any evidentiary basis for finding that the salient issue was the distinction between second-degree and manslaughter, as it was in *Smith I*.[8] *See id.* at 220. Here, the jury's finding of deliberate and premeditated murder, a finding that is supported by the evidence, means the jury "necessarily considered and rejected that the killing was the result of provocation and was therefore without malice." *Id.* at 228. Like the defendant in *Hinrichsen*, Robinson was afforded due process in that

> the jury was not in any way prevented from considering the crucial issue. When it decided beyond a reasonable doubt that Hinrichsen killed with deliberate and premeditated malice, it necessarily also decided beyond a reasonable doubt that the converse was true—i.e., his actions were not the result of a sudden quarrel, done "rashly, without due deliberation and reflection." Instead of preventing the jury from considering the crucial issue, the jury instructions here directly presented that issue to the jury for its consideration. And the instructions at all times placed the burden of proof on the State.

*Id.* (noting also that the first degree murder step instruction is very different from the second degree murder step instruction *Smith I* and found to be erroneous—the key distinction being that in *Smith I*, the jury was prevented from considering the crucial issue—whether the

---

[8] The Nebraska Supreme Court later clarified its holding in *Smith I*, stating where there is evidence that (1) a killing occurred intentionally without premeditation and (2) the defendant was acting under the provocation of a sudden quarrel, a jury must be given the option of convicting of either second degree murder or voluntary manslaughter depending upon its resolution of the fact issue regarding provocation.

*State v. Smith*, 822 N.W.2d 401, 417 (Neb. 2012)(*Smith II*).

killing, although intentional, was the result of a sudden quarrel).   The burden of proving whether Robinson acted with deliberate and premeditated malice, and thus did not act under a sudden provocation, rested on the State.   There was no shifting of the burden to the defendant.

Any error in the step instructions vis-a-vis second degree murder and manslaughter would be harmless.   An erroneous step instruction "is not a structural error requiring automatic reversal."   *See Alarcon-Chavez*, 821 N.W.2d at 368 (involving the standard step instruction defining the elements of first degree murder, second degree murder, and manslaughter, in that order).   "A defendant convicted of first degree murder under a step instruction cannot be prejudiced by any error in the instructions on second degree murder or manslaughter because under the step instruction, the jury would not have reached those levels of homicide."   *Id.* (finding the defendant was not prejudiced and his substantial rights were not affected by the manslaughter instruction).

The court finds the Nebraska Supreme Court's decision in this case is not contrary to, nor did it involve an unreasonable application of, clearly established federal law.   The finding of purposefulness and premeditation are supported by the evidence and the Nebraska Supreme Court's decision likewise cannot be said to be "based on an unreasonable determination of the facts in light of the evidence presented."

The defendant's due process claim based on the State's use of a peremptory strike to remove a juror based on race is also procedurally barred.   Robinson raised this claim on direct appeal as an equal protection violation, not a due process violation.   He did not fairly present the due process claim to the state courts and it is therefore procedurally defaulted. Nevertheless, if the court were to reach the merits of the claim, the record shows that the Nebraska courts' finding that the State articulated a race-neutral justification for the strike is

supported by the record.  Accordingly, the court would find that the Nebraska Supreme Court's findings were not based on an unreasonable determination of the facts in light of all the evidence presented in the state court proceeding, nor were the decisions contrary to clearly established federal law as determined by the United States Supreme Court.

On direct appeal, Robinson challenged the admission of his cell phone records as a violation of state-law evidentiary rules and not as a due process violation.   On postconviction review, the claim was raised as an ineffective assistance of counsel claim, not as a due process violation.  He did not challenge the cell records in state court as a due process violation and accordingly his claim is procedurally defaulted.   Furthermore, the court finds that even if the claim had been properly raised and addressed, Robinson's contention that the evidence was irrelevant and unduly prejudicial is without merit.   The Nebraska Supreme Court's finding that the records had been properly admitted into evidence under the business exception to the hearsay rule and that, because there was no expert opinion being offered, a *Daubert* hearing was not required is not contrary to clearly established federal law.

With respect to the issue of the admission of the nephew's coat in evidence, the claim was raised on direct appeal as a matter of state law and was not addressed on postconviction review under any theory.   Accordingly, the claim is procedurally defaulted. Robinson has not shown cause and prejudice to excuse the default.  If the court were to reach the merits of the issue, the court would find that the coat was properly admitted in evidence.   The coat was relevant and was not unduly prejudicial because it matched witnesses' descriptions and the nephew was arrested wearing the coat.

Similarly, the issue of the marijuana in the coat pocket was not raised in a motion for mistrial or on direct appeal.   On postconviction review it was raised in the context of

ineffective assistance of counsel, not a due process violation.  Accordingly, the claim is procedurally defaulted.

This court affords deference to the Nebraska Supreme Court's factual finding that both counsel were informed of the discovery of the marijuana cigarette.  The court agrees with the Nebraska postconviction court's finding that there is no reasonable probability that the discovery of the marijuana cigarette affected the outcome of the trial.  The evidence establishes that the coat belonged to the nephew, the defendant was on trial for murder and not for drug trafficking, and the possession of a single marijuana cigarette would not have likely swayed the jury in light of all the other evidence of the defendant's guilt.  Accordingly, if the court were to address the merits of the claim, it would find no habeas corpus relief would be warranted.

With respect to Robinson's claims of prosecutorial misconduct in opening and closing statements, the claim was raised in state court as ineffective assistance in failing to object or to move for a mistrial.  Again, the due process claim is procedurally barred.  If the court were to reach the merits, the court would find that the prosecutor's conduct, even if arguably objectionable, did not reach the level of egregiousness that would affect the integrity of the proceedings.  The misconduct, if any, does not amount to structural error from which prejudice would be presumed.  The court agrees with the Nebraska Supreme Court's conclusion that the prosecutor's misstatements or overstatements, if any, did not affect the outcome of the trial.

Robinson's contention that he should not have been sentenced as a habitual criminal was also raised in state court as a matter of state law, not as a federal constitutional claim.  It was not raised on postconviction review at all.  Thus, the claim is procedurally defaulted.  If the court were to address the issue, it would afford deference to

31

the Nebraska Supreme Court's factual finding that Robinson was represented by counsel in connection with the prior conviction.  The record supports that finding.  Robinson has not shown that the Nebraska Supreme Court's decision was contrary to or involved an unreasonable application of clearly established Federal law or was based on an unreasonable determination of the facts in light of the evidence.

With respect to the claims based on the excused jurors, this court agrees with the Nebraska Supreme Court that Robinson can show no prejudice.  The jurors were removed prior to deliberations, were replaced by alternates and there is no evidence of any misconduct or taint to the deliberations.

The court accordingly finds that none of Robinson's claimed due process violations, alone or in combination, are structural errors—defects that fundamentally undermine the reliability and fairness of a trial.

### B.    Ineffective Assistance

This court agrees with the Nebraska Supreme Court that Robinson's counsel met the standard of "reasonably effective counsel" under all of the circumstances.  Because he has not established that counsel was deficient, Robinson cannot establish that there is a reasonable probability the outcome would have been different.  There is no merit to any argument that defense counsel's performance "fell below an objective standard of reasonableness" in failing to foresee a change in the existing law on murder instructions because that change in law did not affect the defendant's conviction for first-degree murder. Moreover, the change would not have made a difference in the outcome of the trial because the jury's finding of purposefulness and premeditation is supported by the evidence.

For the reasons set forth above, the court finds that the Nebraska Supreme Court's findings of fact and conclusions of law are entitled to deference under the statutory standard

of review that applies to factual and legal conclusions reached by the state courts. Robinson has not established that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the state court reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).   Accordingly, the court finds Robinson is not entitled to habeas corpus relief.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).   A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Robinson has failed to make a substantial showing of the denial of a constitutional right.   The court is not persuaded that the issues raised in the Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.   Accordingly, the court will not issue a certificate of appealability in this case.   Accordingly,

IT IS ORDERED:

1.      Robinson's amended petition for a writ of habeas corpus (Filing No. 39) is denied.

2.      A judgment in conformity with this Memorandum and Order will issue this date.

3.      No certificate of appealability will be issued in this case.

Dated this 22nd day of September, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge